Deceased or Mandelstein as independent executive of the State of Lesley Mandelstein. Deceased, plaintiff, defendant, cross-athlete, defendant. Estate of Lesley Mandelstein, in custom planning, out-of-state, defendants, athletes, cross-athletes. On your own behalf, on the plaintiff's account, Mr. Alexander N. Hoffers. On your own behalf, on the defendant's athlete, Mr. David F. Hoffers.  All right, Mr. Hoffers, on behalf of the appellant, you may proceed. Thank you, Your Honor. May it please the Court. So we have a lot of issues here today. One really important issue, which hopefully we'll get a published opinion on that's going to guide many other cases, is the question of a fiduciary duty owed to a deceased estate in an LLC. There's limited law on this. As the Court knows, an LLC is kind of the default form of business now for all small businesses. So it's really important for the Court to further define the duties owed to a deceased member to an LLC. In this case— Just to clarify again, in light of that threshold question, the CPG had no operating agreement in this case, correct? Correct. No specific operating agreement? No specific operating agreement, so running under default rules. The Court found that the prior, the pre-2017 version of the Act applied. She made that ruling based on the complaint being filed prior to the amendment. Another point that might be good for this Court to address in its opinion to give guidance to the lower courts is whether— I think regardless the old version of the Act is going to apply, it would be really helpful for guidance in other cases if the Court were to make a finding as to whether the version of the LLC Act applies based on when the complaint is filed versus when the corporation is formed. It's not really a big issue in this case, but it's something that would be really nice to clarify. It's not a side issue. It's not the critical issue that you— No, not at all. So the question of fiduciary duties owed to an estate. We argued in the lower court, and again here, that Pregado is controlling. Two of you are on the Pregado opinion. So in Pregado, this Court found that fiduciary duties are owed to the estate of a deceased business partner and shareholder company. In Pregado, there were multiple other reasons to apply fiduciary duty to the defendant, but this Court expressly held that in the context of both a close corporation and in the context of a partnership, that fiduciary duties are owed to a deceased partner and deceased small corporation. Did Pregado involve the application of the Act? Not the LLC Act. So isn't that a distinguishing factor? Yes, it is. Pregado wouldn't control that, would it? The question is, what is different about a close corporation versus a partnership versus an LLC? In Pregado, where you have both a close corporation and an LLC to apply these fiduciary duties, then to reach to say that that does not apply to the LLC Act would be outside the bounds of— Well, let me see if I can clarify your position. In Pregado, wasn't that about a decedent and his brother who reportedly agreed that the survivor of them would buy the other one out? There was some purported agreement. Was there not? There is some purported agreement. The language in the case and what this Court's opinion was, is that they found the fiduciary duty existed outside of that agreement, in addition to that agreement, simply because of the estate assuming, you know, stepping in the shoes of the deceased as in the close corporation and the partnership. So in this case, obviously, there was no bisel agreement, correct? Correct. Okay. So it would be, you know, generally in Illinois jurisdiction to— jurisprudence to apply Close Corporation Act and partnership laws to an LLC is consistent throughout, so it would be outside the bounds to say that an LLC Act is different. Going to the specific question of application to an LLC, we can follow the statute. So first, under the LLC Act, either version or applying, essentially a decedent is a dissociated member. So the LLC Act defines the duties owed by a dissociated member. It doesn't expressly provide for the duties owed to a dissociated member. So as for the duties that the dissociated member owes, which the estate would owe, that expressly includes the duty of loyalty and duty of care. So it would be illogical to say that the dissociated member owes duties of loyalty and care, but the entity does not specifically owe duties of loyalty and care. The other issue— Are you saying this is a case that—you have any specific case law that stands for that, that applies in this context? No. No. We have— So you want us to sort of analogize or adopt? We're fitting within the statutory framework. So this is—I'm going to walk through the points of the statute that support these duties. Then we have the Pregado case in the close court and partnership context that defines these duties. And then if you could, well, illustrate is that the various rights under the LLC Act would necessarily include duties owed along with those rights. So we go to back of the LLC Act. So once a decedent dies, the estate assumes the rights of a transferee, and they assume the rights of a transferee and have duties owed to them for the purposes of settling the estate, and for the purposes of settling the estate, they have all rights of a current member. So it seems to me the only duty was to purchase the interest in the LLC. That is the only statutory duty, correct. So now the decedent's estate is essentially a transferee. As a transferee, so they have various duties owed to them for the purposes of winding up. And then the transferee maintains information rights, contains rights to pay out, and it's not related to any liability of the company. The transferee maintains duties of loyalty. So where you have this several portions of the statute that create various duties for the transferee, duties for the estate, and then create duties for the entity that are owed to the estate, then the logical question is, logical conclusion is that the breach of fiduciary duties, and fiduciary duties should run with statutory duties. How would I respond to the argument that if we were to succeed to your position, we would be sort of, quote, unquote, filling in the gaps here in the law? On this point, that's exactly what I'm asking for. That's what's necessary. There is a gap that is, you know, we have, so if you have a, if the LLC has a duty to, you know, buy out the interest, then in the process of buying out that interest, they breach fiduciary duties that prevent that interest from being bought out properly. It's the only logical conclusion that the fiduciary duties need to run. Well, what was the breach? That's my question. Yeah, well, if they, what was breached here? Other than the obligation to buy it out, which was what the court imposed in its rationale, what was breached other than, well, what was breached? So it's a lot like the down and out back situation where, so the decedent gets sick, they lock the doors in the business, they lock them out completely, they lock this family out, and then they transfer over all the clients to the other entity, to the sole proprietorship. But in this business, you have to be licensed in order to conduct business, correct? Yes. So the spouse of the sick partner was not licensed in that. It would be like your law practice. I mean, if you die, and God forbid, if you die, your spouse can't just come in and say, hey, come on, I want in on the business because she's not a lawyer, presuming. So how is this any different? How is there a breach when this, there was nothing that could have been done anyway? To analogize to a law practice, it's a question of, you know, firm fees. And so you can't, no, Barbara can't step in and run the financial planning business, but she can reserve a right to the income from that and from the income that was generated from her husband's work prior to his death. And her husband's clients. Right. So, I mean, the same thing is that, you know, if I perform work, I have earned fees that are outstanding, I die tomorrow, my wife can step in and have a right to the earned fees from my law firm. So what weren't those earned fees taken into consideration in the settlement? A piece of them were. So the fees earned by the Leslie Manelstein sole proprietorship, about $17,000, that was ruled on and we were on that point. Right. So the question is earned fees from the entity. What does that mean? And then the rights to future fees thereof. Why would there be rights to future fees if he's deceased? Well, what ended up happening was the business was sold. So then the sale proceeds of the business, which in this case, and then also the defendant died as well. So the proceeds of the business went to the defendant's trust, and that was all kosher and approved. So logically, you know, if the sale proceeds of the defendant can go to his estate, then the sale proceeds for the plaintiff should have gone to his estate as well. Okay. Make sense? Yeah. Yeah.  And then applying Pregado to the LLC Act, which seems to be the logical conclusion here and fits with the element of jurisprudence, to apply the same close court rules and the same partnership rules to LLCs. And that has a big impact beyond this case. That's a really important point that all courts require some clarification on and guide future decisions. And it's just right in line with what the statute says, because otherwise there's no real remedy to a breach in the winding up process. And especially, I mean, here. But we have to find, for the dominoes to fall into place, and Larry, what you're saying is don't we have to find there was some breach initially. If we were to conclude there was no breach, we wouldn't be going down the road that you're suggesting. Correct. There has to be some big listing obligation to go down that road. Correct. All right. I think you don't need to make any new factual findings. If you take the factual findings from the trial court, you can find the breach. Well, the trial court, did the trial court find there was a breach? They found there was no duty. Right. They found there was no duty. So they didn't get to the question of breach. We would have to find there was a duty, correct? Correct. So all we're asking is find there was a duty or a mandate to go out on trial on whether or not there was a breach. That make sense? If we were to find there was a duty, right? Correct. Yeah, correct. Okay, the next question here. Less grand implications because of the amendment of the LLC Act is whether attorney's fees should have been awarded under the Act. The dangerous point here is that if this court affirms this case is going to be used as, you know, in every trial that we have on the LLC Act, this is going to be, ah-ha, you never need to award fees. Well, fees are discretionary, correct? They're discretionary. But under these facts, if you don't award fees here, when would you? See, if I have this correct, under the Act you're referring to, it requires fees to be applied. There has to be a finding somebody acted arbitrarily, vexatiously, not in good faith. Correct. So basically correct. That would trigger the obligation to impose fees. Yes. The trial court made specific findings that both sides had good faith arguments to make. Therefore, there was no vexatious, unreasonable conduct on either side. Plaintiffs, family, or defendants. So what's wrong with that finding? And what's our standard of review? On that question, on the factual question of that, it's going to have to be manifest way, the evidence. Which means an apposite conclusion is clearly apparent. It's a manifest way. It's a pretty nice hurdle, isn't it? I agree. That's why we've got five different questions for you to review. So now here, where you have an offer made shortly after death for $200,000, that's one key point. The second key point is the experts on both sides testifying that the value was clear objectively as of the date of the death. And all the experts were able to opine on the value as of the time of death. So there's no question that had either expert look at this within weeks of Leslie's death that they could have achieved the value. And they could have offered that value. Instead, they didn't. So there's no reason why. And then if they offered the $30,000 or whatever we wound up with back then, then we wouldn't have a plaintiff for unreasonable vexatious delay. Instead, there was no offer. So if this isn't that, where an expert opines that all the information was available to make this determination as of the time. And again, it's just to prevent flogging of the courts, that to enforce this and to find this against the manifest way of the evidence, you're going to prevent a lot of litigation. If the rule is clearly defined, and that's why the legislature. How will we be preventing a lot of litigation if we award a case here? I think you might be fostering litigation. Well, no, because if you. It's punitive. It's punitive. It's preventive. So if I'm advising a corporation whose partner is left, watch out because this Mandelstein case, if you don't get an expert involved to value this and actually create and make a reasonable attempt to fairly value this and buy out your partner's interest, you're going to get stumped. That will force action on this. And that's why the legislature put in that the filing may be based on a company's failure to make an offer to pay or comply with the section. So the question of complying with the section is make an effort to actually value it. And so if you want essentially CYA on this point, what a close corporation should do is call their accountant and say, give me a value on this. And their accountant renders an opinion as to value, and they can offer that, and then they're safe. So here, where there's no effort to actually value the business, there's an offer of $200,000, and then we go on to litigate for years, this is exactly what the statute is designed to prevent. So we don't enforce fees here.  And granted, it's been amended, but still, my position is that the version of the act applies as and when the corporations form. So we're going to be fighting this question many times over. I've got four other cases pending with this cause of action in it. So it's going to keep coming up, and it's a great opportunity for the court to narrow that issue. If you don't mind, if I can keep going and get a couple more points. Well, you'll have some additional time for argument as per the agreement with counsel on your rebuttal and cross appeal. Okay. But the time is up on your initial argument. That was the important stuff. All right. Thank you, Mr. Long. All right, Mr. Hartley, you may proceed on behalf of the appellant. May it please the Court. I'll tackle the issues in the order that the appellant tackled them today with you guys, just to clarify a few points that I think he brought up. First, I think, as Your Honor has correctly stated, they rely on Pregano very heavily in their case, and I just don't think that's applicable here at all. Why not? For the reasons that you elucidated earlier. You're lying on me now? You did a very good job. I don't know if that's good authority. Careful, it's your 40th. Similarly, they rely on the Hodgkin v. Gaylord case, and that dealt with a corporation and a shareholder. So in their brief, they tried to sort of lump that in, that, oh, hey, there's this big duty. This case is an example of that. Why would it be any different for an LLC, which is basically just a different way to develop a corporation, probably based upon tax reasons? Why should it be treated any differently than a corporation or a shareholder or a different situation? Yeah, so LLCs are sort of a much different animal than a corporation. So a corporation, you have sort of standards set up. You have the corporation and you have shareholders in the corporation, and the shareholders may or may not be involved in the running of the business, and that's where a lot of their duties stem from. And that was the case in the Gaylord case that there were shareholders that were involved. With the LLC, you have sort of a broad way in which you can organize the LLC. It gives you a lot of different options. This one was essentially run as a partnership, two-member LLC. So the laws in the LLC Act, I think, reflect that difference. They contemplate that they might be run much more like a partnership than a standard corporation. So that's why I think it should be treated differently, and that's why there's a whole different Act that does treat it differently. Well, he wants to extend it, so give us the reasons why his argument is erroneous as to why it should be extended or not extended. Well, I don't think he has any case law to support that it should be extended, so essentially he's asking you guys to do that today. He would say that it's just sort of a logical progression in the law. That's going to be his argument, so tell us why we shouldn't do it. So I'm not sure exactly where he gets the idea that a transferee has these duties of loyalty. I believe it's from a section in the LLC Act that he cited in his brief, Section 3025, which does imply that. But that section didn't exist until July of 2017. It was part of the sort of full redo that the legislature did of the Act. So I don't think that's applicable here at all. Because the prior Act applied? Exactly, because the prior Act applied. And does he make any arguments as to why the prior Act doesn't apply? No, he doesn't, and I think he admitted at the beginning of his oral arguments today that no one's disagreeing that the prior Act does apply to this situation. I think it would be unfair to hold my client accountable for an Act that didn't exist until three years later. And the law at that point was very clear. If you look at a snapshot on the date of death of the deceased member, this is the value of the LLC. So maybe he has an argument for future cases, but maybe this is not the case. Does that seem to be what you're saying? It could be. If there are future cases that happen underneath this sort of new statute, that could be the case. But certainly I think the LLC Act, as it was written in 2014, says snapshot, value on date of death. And that's a no-extending obligation. The third argument, the second one he brought up today, about the fees and expenses under the LLC Act, he discussed this idea that there was some offer, and he talked about his brief that this offer was, the court found that this offer was indeed a valid offer, and that's simply not true. All the court found was that Barbara Amosine earnestly believed it was an offer. And the court found that she was earnest in her testimony and credible, but the court also found there was conflicting evidence on the other side. Yes, exactly. And the court is the sole judge of the credibility of the witnesses and the weight to be given to the testimony, correct? Yes, that's correct, Your Honor. Well, so we had counterclaims. Appellant argued that, oh, why did we not give a value? And we did give a value, so we thought there wasn't a value. We had counterclaims at trial that basically said, for multiple reasons, including that Leslie Amosine had taken money out of the LLC when he wasn't entitled to it, that his actual value was zero, or less than zero, because she owed us money. The court did not rule in our favor, but the court did rule that each side had a valid base for their arguments at trial. Additionally, there were plenty of offers to settle over the course, and some of them made it into the record at trial. Exhibit CCCC included a letter that we sent, the other side, where we gave him an offer, and we came up with a value of the custom plaintiff that we considered that leave was roughly about $10,000 off what the judge ultimately decided. So we were pretty close. It was not the hundreds of thousands of dollars off that appellant was. So I'll go back to the appellant's first argument in the brief, and that's the issue of motion for leave to file a jury demand. Quite simply, we think that the law is very clear on this. It's a true problem test. Good cause for delay in the absence of prejudice. I don't think the appellant has shown either in this case. I was going to ask him a question about that because I'm perplexed by one matter, and I didn't see it in the record. I take it there was some kind of a hearing on this issue when the plaintiff asked for a leave to file a jury demand. They must have gone into court and argued why they should get it, correct? So he filed a brief, I know, on the issue at the time. But I don't see, is there any transcript of that hearing on the jury demand at all in the record? So I don't think there were all arguments. There's certainly not a transcript of it. There was no court reporter there at the time. Okay. It's two different answers. Either there was a hearing and there's no court reporter, or there wasn't a hearing, so very different. So I don't remember if there's a full hearing where both sides were able to sort of argue their piece. I know we've reached the issue extensively. But there's no court reporter present, correct? Not that I know of. And there's no specific adequate substitute in the record, right, like a bystander's report? No. So my question is, and maybe I should be asking him this, if the standard of review is abuse of discretion, wouldn't it help us to have the ruling in the record somewhere in arguments that were made? How do we know if the court abuses discretion? And that's his burden. I agree. I think that would be a better question for a palate on that issue. I'll touch briefly on the time remaining on their fourth argument at trial, and that's basically the fourth argument in the briefs, that the court somehow erred in not ruling on the issue of the sole proprietorship. So I think it's a pretty clear standard in Illinois that the complaint is where these sort of arguments should be made to put everyone on notice that these are the issues for trial, these are the issues for argument. That wasn't done here? I don't believe it was done here, no. They have sort of two arguments. The first problem is that they inarticulately pled them. They are indeed in the complaint, but it's inarticulately pled. I think that's very generous on their part. They point to Count 2, where these apparently are contained, and Cherry picked some paragraphs from it. I think when you read Count 2 as a whole, certainly it's very clear that Count 2 is a claim for advisory fees and duties under the LLC Act. It's not a claim for the value of the sole proprietorship. Isn't it a liberal construction? We pretty much have to give the benefit of the doubt? Yes, certainly there is a liberal construction, but I think here the trial court specifically said, hey, we read the complaint. We don't think there's anything in here that rises to the level of a sole proprietorship. If you read through Claim 2 as a whole, that would be an exceedingly liberal reading of it. There's a second argument. So just to reiterate, Count 2, the court held, that therefore even under a liberal construction, which is what you're talking about and Justice Jorgensen asked for, or is questioning, the court held it was a claim for breach of fiduciary duty and recovery advisory fees. It was not the issue of sole proprietorship. Exactly. And the trial court did issue advisory fees under Count 2. So I think the court read that out correctly and ruled correctly on it. The second argument is that, well, even if we didn't plead it correctly, enough information was brought on the trial that sort of de facto became part of the pleadings. They cited a couple of cases, including the, where is it, I can't see it right now, I think McKinney v. Nathan, saying they sort of stand for that idea. And there are cases that do stand for that idea, but I think in those cases they're distinguishable, that the parties fully argued these cases at trial. They brought forth causes of action about why this duty might exist, for example, and what the value would be. Here, Appellant solely points to a couple of instances where a value of lessee sole proprietorship was hypothesized by one of the experts. And I think that was just done in the context of value and sort of CPG as a whole, because one of the big questions at trial was, were there three entities? Was it this mythical idea of a consolidated CPG that Appellant was pushing, or were there three separate entities, which is what we were trying to establish and which is ultimately what the circuit court held. So I think that is where the value of lessee sole proprietorship came in. Certainly there wasn't enough held at trial to say, oh, both parties totally agreed that this was an issue, duty was shown, all of that. I think this case is much more analogous to Walker v. McGuire, in which the devil served class action case, statutory fees, or fees allowed by statute, and the Supreme Court held that, you know, the plaintiff frames the issue before the court. And in Walker, the parties had even briefed the issue. The court had asked them to brief an issue, it was fully briefed, and still the trial court declined to rule on that because it wasn't contained in the complaint. And that was upheld by my Supreme Court. The last point I would just like to make is just on their second and fourth arguments, so the fiduciary duty under the Act, and that somehow the trial court should have ruled on sole proprietorship. I think the theories of mootness and harmless error would apply because they've shown no damage. Certainly on fiduciary duty, there's no damages there. They got a snapshot of the value on the day of death, and they got that. The trial court was able to rule on that. And on the fourth one, the sole proprietorship had no value, even if you – How about his prior clients? Yeah, so in the world of investment advisors, you have an asset management agreement, and that's an agreement between you and the client that says, hey, I'm an asset manager, I'm a registered investment advisor, I can take fees, these are the fees. So Leslie was not a registered investment advisor until roughly eight months before his death. So prior to that, every client had to be a client of Lester Manlestein or Custom Planning Group. When Leslie did become a registered investment advisor, he could have clients of his own. He took the time to have, I think, four individuals and six accounts under his name individually. But he handled those other clients, but he just didn't sign the agreement because he could not. So those clients had agreements signed with his father, and he served as what's called a – I believe it's a representative. So a non-registered investment advisor, investment advisor representative, where he worked under his father, and his father paid him fees for that. So that would be more analogous to me. So I work at a firm. The client signed an agreement with the firm. But it's not your personal fees. But it's not my personal fees. My boss takes them. So you're saying just those four individuals that he actually signed. Exactly. Signed. Yeah, that's correct, Your Honor. But even if they were all his, for argument's sake, it's a service industry. Clients are free to go where they will at any time. And the estate couldn't service them. So they were free to go anywhere. So I think the law, the legal analogy that Your Honor brought up earlier, I think it's an apt one. If two lawyers share office space, each of them a client, each of them a firm, and one of those lawyers dies, there's no duty for that person he shares office space with to somehow protect those clients or give value to the estate for those clients. Those clients can go to another firm. They can go to any firm. They can go to that lawyer that shares office space. So they're essentially free agents to go where they may. How do you place a value on a free agent that may or may not be there? Excuse me, Your Honor? How would you place a value in those circumstances when a client may or may not be there? Exactly. So there is no value, I think, that can be placed on those clients. So the estate, there was really nothing for the estate to sell or no value to be gotten from those clients in this situation. And that was just sort of the nature of the setup and the fact that they didn't have a buy-sell agreement or any succession plan at all. And I think the trial court pointed that out and said, you know, family businesses have sort of their own way of running. It's unfortunate in this situation, but this is what the law says. Sometimes they don't do things formally, but in the end, sometimes they can come back with great profits. Exactly. And this is one of those situations. And that's Your Honor. Is there any further questions for me? I think I'm done. I believe so. Thank you. Thank you, sir. Thank you very much. All right. Mr. Lopez? First, quickly, with regards to the transferee statute, the same provisions were in place regarding the duties owed by a transferee, both under the pre-2007 act and under the current act. So it's the same either way. Moving on to the jury demand question. So, no, there was no lengthy argument on it. We presented the motions. The judge ruled on it to the extent that, you know, when there is no transcript of an oral argument, then you can find any possible reason in the record to affirm you're not bound by the reasoning of the trial court. How does that law help you? If there's no transcript and you're alleging that you must, that the trial court abused its discretion in not granting the late jury demand and there's no record, how does that invert to your benefit? There is a record of the briefing on the issue. You can review the briefing. You can find any possible reason that this could have been an acceptable ruling, and there's no possible reason it's been an acceptable ruling. That would be to affirm. Right. Not to reverse. It's a foul tissue, isn't it? It goes against you. That is a reason to uphold the trial court's ruling. But when you're talking about jury demand also, I mean, she, she, it was her choice who to select as her attorney, wasn't it? So that's the one point, and there's not enough in the record on this, what in reality happened is Chuak and Texan handled the estate planning. She calls up the lawyer, handled the estate planning, and says, okay, we'll take care of this for you. And there was no real thought in the selection besides these are the guys that did the estate planning. Once the litigation got going, she hired a litigator. That's analogous to this insurance situation in Stevens. It's very hard to distinguish Stevens and to not, to stay in line with the controlling precedent on Stevens. So in Stevens, there's just really no good reason given why they were allowed to have a jury demand at that stage. And this is the controlling Supreme Court precedent. There's no good reason there. So, but this is controlling precedent. Let me ask you this about Stevens. You say there's no good reason. In Stevens, and tell me if I'm misreading this, the defendants in that case were initially represented by an attorney who they did not choose, correct? Yes. They did not necessarily represent their interests. Here, the plaintiff was at all times, up until the withdrawal, represented an attorney of her own choosing. Isn't that really a legitimate basis to distinguish Stevens? No, because, I mean, what interests the lawyer? Who does the insurance company really represent? Well, this is, you know, basic law. I mean, the insurance company is retained to represent the defendant, and they're on the hook, you know, for, you know, they need to defend regardless of the limits of the policy and all these other reasons they are defending. You know, that's all very true. Yeah. Except the plaintiff in that case, the insurance company, does the plaintiff, does the insurer get to choose the attorney for the insurance company? That's not a question of choice. I mean, it's a question of definition. Well, it is a question of choice because there's a big basic difference. If you go out and you hire your own private attorney, there's an ethical and fiduciary duty to you, and the insurance company's attorney, okay, is hired by the insurance company. And owes an ethical and fiduciary duty to the insurer. So you see no distinction between hiring an attorney of your own and having somebody else hire the attorney for you. In the insurance context, no. But we're not in the insurance context, right? That's what the Stevens case is. So by analogizing to it, I mean, it's not a good reason that the Supreme Court held this, and the Supreme Court hasn't overturned it and found by Supreme Court precedent. And what the Supreme Court goes on to explain there is the great importance of the right to a jury trial, how that should not be disturbed, and it goes on to discuss the lack of prejudice as a result of the jury demand. So you're bound by controlling precedents, and it's not a great case. And, you know, the Supreme Court can revisit the issue if they want to, but for now it's binding on you. What is binding? Every time somebody files a late jury demand, the court teleports the grant. Is that what the case says? It says that because an attorney screwed up and didn't do his job well, and then a subsequent attorney files a jury demand, the court should allow the jury demand so long as there's no prejudice. Wouldn't that really promote gamesmanship? I mean, really. Say, for instance, they strategically decide we're not going to file a jury demand. We want to do a bench trial. Then all of a sudden they don't like the way things are going, and they say, I got an idea. Let's get somebody else to file or come in on the case. Then you can ask for a jury demand and you're good. I mean, that's promoting a lot of gamesmanship. That's where you would have to be granted, wouldn't it? It would have to be granted. According to Supreme Court precedents. That's what the Supreme Court depicts as the case. But why did the Supreme Court in Stevens say that there should be a jury demand? They concluded that the trial court abused its discretion in denying the jury demand, but in support they emphasized that they lost it because of careless action by an insurance company's attorney. It was some careless action by an attorney that was not chosen by the defendant. Careless action by an attorney retained to represent the plaintiff. I mean, that's careless action. The issue is careless action. Who retained the attorney? We're dancing around the issue. The plaintiff hired the attorney? There's no question the plaintiff hired the attorney. In which case? In my case? Or in this case it's the insurance company? The insurance company hired, not the individual insurer. Not in this case. Not in that case. Obviously the client hired it. But in Stevens, as she says, the court noted that it was hired, the attorney was not hired by the claimant. Correct? Correct. There you go. You're down a dangerous path there. Because, I mean, if the insurance company doesn't actually owe a duty to the insurer that they're retained to represent, and that they can get away with malpractice and that's okay because the insurance company hired them, that's essentially a limitation. I don't think there's anything the Supreme Court said in that case. I think the way they distinguished the ability to file a late jury notice is because in the Stevens case the defendant technically didn't have a lawyer of their choosing, it was the insurance company. Then when they came around to have a lawyer of their choosing, then the Supreme Court said, okay, now you can put. So your client chose their lawyer and it wasn't some schlocky firm that doesn't know what a jury demand is. I mean, it's. But, I mean, you can't even talk about Stevens. They have the exact same interest. So why would it matter? I don't know. Why did the Supreme Court find that? You're telling us to follow the Supreme Court finding. We have to read the Supreme Court case. If we read the Supreme Court case, we can distinguish why they did what they did in that case versus what they did here. Because the importance of the right to a jury trial is so very important. When they went and found an impossible way to give this person the right to a jury. So we'll have every defendant in the lower courts that get convicted and don't like their prison sentence come in and say, oh, by the way, my lawyer dropped the ball because I didn't get to file my jury demand. Well, if the lawyer asked, and then the question turns out, it really turns into a question of prejudice and timing. So you can distinguish based on the timing. So here, you know, the jury demand in Stevens is about five months after the original complaint. That's a key fact here. We're still, you know, as of the time the jury demand was filed and I came into the case, Lester was still alive. We were still in discovery. Nothing, you know, there have been no dispositive motions. So I think the focus is on Stevens. It's really all about the prejudice issue and less about and that it allows essentially a train in the black is a good reason. Let's see, points we wanted to cover. The cleaning construction question. So ultimately, what originally fled is CPG is this umbrella holding all three businesses. Within those three businesses that includes Leslie's sole proprietorship, then various bad things happen with Leslie's sole proprietorship. And then there's various references in the complaint to clients and monies belonging to the estate directly, not CPG. So there's some distinguishing between within that umbrella that includes Leslie's sole proprietorship. So really the issue is the construction of the pleadings. That if you plead that CPG, which includes all these things, which includes Leslie's sole proprietorship, then duties are breached, contracts are breached, everything's breached with everything including that umbrella. And then at trial, the court finds that umbrella doesn't exist. So then to construe the pleadings that because the umbrella doesn't exist, you pled the underlying pieces that fell under that umbrella, then there's no claim. That just doesn't logically follow as far as the liberal construction of the pleadings. The more important issue, I think, is just in the administration of justice that we have an entire trial and we're looking for summary judgments. We went through the whole case without, you know, under these pleadings, and there's ample testimony allowed and objections ruled on and expert testimony presented. And we went through the whole process. This is a complete waiver of the pleadings question by both the court and opposing counsel when we have experts opining exactly on only Leslie's interests. We have tons of testimony on just that issue, an argument on just that issue. So the law is clear that, you know, the actual form of the pleadings can be waived, and that's what's happened here, and that's the whole process of the case. So to get to the very end and say, oh, oh, oh, that's not what the pleadings said is contrary to precedent, and that would necessitate a new trial. Finally, Mr. Hartley referenced this office space analogy. I'm trying really hard to avoid it. You're going to need to hear the facts here because there's a lot. There's some good legal questions. But with the office space analogy, the key distinction is so, you know, we'll go back to a law firm because we all know that. Lawyers share offices. Lawyers are also members of the same firm, and then they have some cases that are not with the firm. So here it's not just we have offices next to each other, Lester and Leslie. They're also members of an LLC that owe duties together as LLC members. So Lester, wearing the hat of CPG LLC member, has access to all of Leslie's files, including his sole proprietorship files, reaches his duties wearing the hat of an LLC member, as to Leslie's clients. So the key distinction there, and that goes back to the big argument on this case, is the fiduciary duties owed by an LLC member. Are Lester and Leslie both interacting with all of the clients, or is just one interacting with their clients and one interacting with their clients? The facts of trial were that Leslie interacted with everybody at some point. Lester interacted with most but not all at some point. After Leslie died, Lester interacted with all. I think I'm way over my time. You were wondering. Okay. All right. Thank you again. Thank you very much for your time. Thanks for letting me talk to Lester. Thank you. What was the agreement? Is there any further time than allowed? I mean, not specifically. Okay. All right. Then we will conclude the arguments, and I'd like to thank both counsel for the quality of the arguments here this morning in this very interesting case. We will, of course, take the matter under advisement, and a written decision will enter in due course.